IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STANLEY FRODYMA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALBANY MOLECULAR RESEARCH, INC., THOMAS E. D'AMBRA, DAVID H. DEMING, KENNETH P. HAGEN, GERARDO GUTIÉRREZ FUENTES, ANTHONY J. MADDALUNA, FERNANDO NAPOLITANO, WILLIAM S. MARTH, KEVIN O'CONNOR, THE CARLYLE GROUP, GTCR LLC, UIC PARENT CORPORATION, and UIC MERGER SUB, INC.,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT FOR:<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br><br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>(3)  Breach of Fiduciary Duties<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.    Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Albany Molecular Research, Inc. ("AMRI" or the "Company"), against AMRI and the Company's Board of Directors (the "Board" or the "Individual Defendants) for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of defendants' efforts to sell the Company as a result of an unfair process for an unfair price. Also named as defendants are the Carlyle Group, GTCR LLC, UIC Parent Corporation ("Parent") and UIC Merger Sub, Inc. ("Merger Sub")

("Merger Sub," collectively with Parent, Carlyle Group and GTCR LLC, the "Buyers"). This action seeks to enjoin a stockholder vote currently scheduled to take place on August 18, 2017 in which affiliates of the Carlyle Group and GTCR LLC will acquire each outstanding share of AMRI common stock for $21.75 per share in cash (the "Proposed Transaction").

2. On June 5, 2017, AMRI's Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with the Buyers. Pursuant to the terms of the Merger Agreement, shareholders of AMRI will receive $21.75 per share in cash.

3. On July 3, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. Thereafter, on July 14, 2017, defendants filed a Definitive Proxy Statement (the "Definitive Proxy Statement") with the SEC in connection with the Proposed Transaction.

5. Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues AMRI and is the result of a flawed sales process. Post-closure, AMRI's stockholders will be frozen out of seeing the return on their investment of any and all future profitability of the Company.

6. Notably, as evidenced by the Definitive Proxy Statement, the sales process leading up to the Proposed Transaction was rife with inadequacies. This is especially noteworthy given the massive payouts that the insiders, including several Board members, stand to gain number in the millions of dollars, should the Proposed Transaction be consummated.

7. Further, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board members and executive officers will be able to exchange large, illiquid blocks of Company stock for massive payouts, in addition to receiving cash in exchange for certain outstanding and unvested options and/or other types of restricted stock units. Moreover, certain directors and other insiders will also be the recipients of lucrative golden parachute agreements, triggered upon the termination of their employment as a consequence of the

consummation of the Proposed Transaction. Such large paydays upon the consummation of the Proposed Transaction have clearly tainted the motivations of the Board in approving it.

8. Finally, in violation of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act" or the "1934 Act") and their fiduciary duties, defendants caused to be filed the materially deficient Definitive Proxy Statement on July 14, 2017 with the SEC in an effort to solicit stockholders to vote their shares in favor of the Proposed Transaction. The Definitive Proxy Statement is materially deficient and deprives AMRI's stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.

9. The Definitive Proxy Statement omits material information with respect to the Proposed Transaction, which renders it false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the 1934 Act in connection with the Definitive Proxy Statement.

10. Absent judicial intervention, the merger will be consummated, resulting in irreparable injury to Plaintiff and the Class. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

12. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

14. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AMRI common stock.

15. Defendant AMRI is a Delaware corporation and maintains its principal executive offices at 26 Corporate Circle, Albany, New York 12212. AMRI's common stock is traded on the NasdaqGS under the ticker symbol "AMRI."

16. Defendant Thomas E. D'Ambra ("D'Ambra") is a director of AMRI and has served as Chairman of the Board since January 2014. D'Ambra co-founded the Company in 1991 and served as its President and Chief Executive Officer ("CEO") until 2013.

17. Defendant David H. Deming ("Deming") is a director of AMRI.

18. Defendant Kenneth P. Hagen ("Hagen") is a director of AMRI.

19. Defendant Gerardo Gutiérrez Fuentes ("Gutiérrez") is a director of AMRI.

20. Defendant Anthony J. Maddaluna ("Maddaluna") is a director of AMRI.

21. Defendant Fernando Napolitano ("Napolitano") is a director of AMRI.

22. Defendant William S. Marth ("Marth") is a director of AMRI and has served as President and CEO of the Company since January 2014.

23. Defendant Kevin O'Connor ("O'Connor") is a director of AMRI.

24. The defendants identified in paragraphs 16 through 22 are collectively referred to herein as the "Individual Defendants."

25. Defendant The Carlyle Group is a global alternative asset manager.

26. Defendant GTCR LLC is a private equity firm.

27. Defendant UIC Parent Corporation is a Delaware corporation and a party to the Merger Agreement.

28. Defendant UIC Merger Sub, Inc. is a Delaware corporation, a wholly-owned subsidiary of UIC Parent Corporation, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of AMRI (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

30. This action is properly maintainable as a class action.

31. The Class is so numerous that joinder of all members is impracticable. As of June 5, 2017, there were approximately 42,959,065 shares of AMRI common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

32. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; (ii) whether defendants made material misrepresentations and/or omitted material facts from the Definitive Proxy Statement; (iii) whether defendants have breached their fiduciary duties; and (iv) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

33. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

34. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the

interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

35. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

36. By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with AMRI's shareholders and owe them the duties of due care, loyalty, and good faith.

37. By virtue of their positions as directors and/or officers of AMRI's, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause AMRI to engage in the practices complained of herein.

38. Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company's shareholders. To diligently comply with these duties, directors of a corporation must:

   a. act with the requisite diligence and due care that is reasonable under the circumstances;

   b. act in the best interest of the company's shareholders;

   c. use reasonable means to obtain material information relating to a given action or decision;

   d. refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

   e. avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

  f. disclose to the company's shareholders all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

39. In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of AMRI, are obligated to refrain from:

  a. participating in any transaction where the directors' or officers' loyalties are divided;

  b. participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

  c. unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

40. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to plaintiff and the other public stockholders of AMRI's, including their duties of loyalty, good faith, and due care.

41. As a result of the Individual Defendants' divided loyalties, plaintiff and Class members will not receive adequate, fair or maximum value for their AMRI common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

42. AMRI is a global contract research and manufacturing organization that has been working with the life sciences sector and pharmaceutical industry to improve patient outcomes and the quality of life for more than two decades.

43. With locations in North America, Europe, and Asia, the Company provides customers with a wide range of services and cost models.

44. AMRI has a diversified portfolio of customers – more than 300 from large pharma, biotech, specialty, and adjacent spaces and have high pipeline visibility for the future.

45. According to its website, the Company is well positioned to capture what it believes are attractive growth opportunities in a market that continues to benefit from outsourcing.

46. On May 9, 2017, AMRI issued a press release wherein it reported its financial and operating results for the first quarter ended March 31, 2017. The Company reported first quarter total revenue of $163.8 million, up 55% from 2016. Additionally, first quarter adjusted EBITDA was $24.0 million, up 83% from 2016. With respect to the financial results, Individual Defendant Marth commented:

> We delivered an excellent first quarter, driven by 56 percent growth in contract revenue, 7 percent on an organic basis, including double digit organic growth in our Discovery, Development and Analytical Services (DDS) and Active Pharmaceutical Ingredient (API) businesses[.] GAAP income from operations increased $6 million, a 150% increase quarter over quarter, and adjusted EBITDA increased $11 million, an 83% increase quarter over quarter, illustrating strong and efficient execution and leverage across our operations. We are confident that these trends will continue through the year and are maintaining our outlook for 2017, which includes 28% growth of contract revenue, 7% growth of organic contract revenue, and double digit earnings growth at the midpoint.

47. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

48. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

49. Further, the Company must promptly advise the Buyers of any proposals or inquiries received from other parties.

50. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under

extremely limited circumstances, and grants the Buyers a "matching right" with respect to any "Superior Proposal" made to the Company.

51. Further locking up control of the Company in favor of the Buyers, the Merger Agreement provides for a "termination fee" of $35 million payable by the Company to the Buyers if the Individual Defendants cause the Company to terminate the Merger Agreement.

52. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

53. The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

54. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

55. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*Potential Conflicts of Interest*

56. The Proposed Transaction may be tainted by the self-interest of the Individual Defendants. Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.

57. Furthermore, under the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, each outstanding restricted stock unit ("RSU") award will be fully vested (with any performance conditions applicable to such RSU award deemed satisfied in full) and cancelled by virtue of the merger and, in exchange therefor, each holder of any such cancelled RSU award will be entitled to receive a payment in cash.

58. Significantly, members of the Company's Board, executive team, and other Company insiders collectively own thousands of such Company stock options and/or RSUs for

which they will receive large cash payouts not shared amongst plaintiff and other public stockholders of the Company.

59. Specifically, the following executive officers and non-employee directors of the Company will receive the following payouts as a result of their ownership of Company stock options and RSUs:

| | Stock Options | | | RSU Awards | | PSU Awards | | Restricted Stock Awards | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Aggregate Number of Shares Subject to Outstanding Stock Options (#) | Weighted Average Exercise Price ($) | Aggregate Stock Option Payment ($)(1) | Number of RSUs (#) | Aggregate RSU Payment ($)(2) | Number of PSUs (#) | Aggregate PSU Payment ($)(3) | Number of shares of Restricted Stock (#) | Aggregate Restricted Stock Award Payment ($)(4) | Total Equity Award Consideration |
| **Executive Officers** | | | | | | | | | | |
| William S. Marth | 188,188 | 17.65 | 771,571 | 44,993 | 978,598 | 135,884 | 2,955,477 | 83,452 | 1,815,081 | 6,520,727 |
| Milton Boyer | 58,920 | 17.39 | 256,891 | 8,765 | 190,639 | 16,276 | 354,003 | 14,368 | 312,504 | 1,114,037 |
| Christopher M. Conway | 109,949 | 11.28 | 1,151,166 | 7,845 | 170,629 | 15,932 | 346,521 | 9,420 | 204,885 | 1,873,201 |
| Margalit Fine | 21,725 | 18.41 | 72,562 | 4,413 | 95,983 | 21,624 | 470,322 | — | — | 638,867 |
| Steven R. Hagen, Ph.D. | 107,331 | 13.88 | 844,695 | 9,720 | 211,410 | 18,956 | 412,293 | 10,958 | 238,337 | 1,706,735 |
| Lori M. Henderson | 249,752 | 10.26 | 2,869,650 | 13,745 | 298,954 | 26,176 | 569,328 | 13,514 | 293,930 | 4,031,862 |
| Felicia I. Ladin | 172,478 | 17.03 | 814,096 | 14,678 | 319,247 | 28,060 | 610,305 | 19,118 | 415,817 | 2,159,465 |
| George Svokos | 247,208 | 13.61 | 2,012,273 | 18,439 | 401,048 | 35,716 | 776,823 | 15,941 | 346,717 | 3,536,861 |
| **Non-Employee Directors** | | | | | | | | | | |
| Thomas E. D'Ambra, Ph.D. | 129,980 | 7.27 | 1,882,110 | 3,802 | 82,694 | | | 99,207 | 2,157,752 | 4,122,556 |
| David H. Deming | 9,358 | 18.41 | 31,256 | 3,802 | 82,694 | — | — | — | — | 113,950 |
| Gerardo Gutiérrez | 15,898 | 17.32 | 70,428 | 3,802 | 82,694 | — | — | — | — | 153,122 |
| Kenneth P. Hagen | 9,358 | 18.41 | 31,256 | 3,802 | 82,694 | — | — | — | — | 113,950 |
| Anthony J. Maddaluna | 15,898 | 17.32 | 70,428 | 3,802 | 82,694 | — | — | — | — | 153,122 |
| Fernando Napolitano | 9,358 | 18.41 | 31,256 | 3,802 | 82,694 | — | — | — | — | 113,950 |
| Kevin O'Connor | 92,347 | 9.57 | 1,124,786 | 3,802 | 82,694 | — | — | — | — | 1,207,480 |

60. Furthermore, certain employment agreements with several AMRI officers or directors are entitled to severance packages should their employment be terminated under certain circumstances. These "golden parachute" packages are significant, and will grant each director or officer entitled to them, at the very least, hundreds of thousands of dollars, compensation not shared by AMRI's common stockholders.

10

61. The following table sets forth the golden parachute compensation for certain AMRI directors and officers, as well as their estimated value payable:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| William Marth | 2,788,788 | 6,440,101 | 38,520 | 9,267,409 |
| Felicia I. Ladin | 1,103,473 | 1,877,620 | 25,817 | 3,006,910 |
| Lori M. Henderson | 1,077,631 | 1,576,698 | 31,125 | 2,685,454 |
| Steven R. Hagen | 1,001,396 | 1,171,936 | 31,125 | 2,204,457 |
| George Svokos | 1,297,292 | 2,030,743 | 31,125 | 3,359,160 |

62. Thus, while the Proposed Transaction is not in the best interests of AMRI's public stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Definitive Proxy Statement Omits Material Information, Rendering It False and Misleading*

63. Defendants filed the Definitive Proxy Statement with the SEC in connection with the Proposed Transaction.

64. The Definitive Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

65. First, the Definitive Proxy Statement omits material information regarding AMRI's financial projections and the financial analyses performed by the Company's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse").

66. With respect to AMRI's financial projections, the Definitive Proxy Statement fails to disclose: (i) stock-based compensation; (ii) taxes; (iii) change in net working capital; (iv) capital expenditures; and (v) a reconciliation of all non-GAAP to GAAP metrics.

67. With respect to Credit Suisse's *Discounted Cash Flow Analysis*, the Definitive Proxy Statement fails to disclose: (i) the illustrative terminal value of AMRI; and (ii) the inputs and assumptions underlying the discount rates ranging from 7.75% to 9.75%.

68. With respect to Credit Suisse's *Premiums and Selected Leveraged Buyout Transactions* and *Premiums in Selected All-Cash Transactions* analyses, the Definitive Proxy

Statement fails to disclose: (i) the transactions observed by Credit Suisse in the analyses; and (ii) the premiums paid in such analyses.

69. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

70. The Definitive Proxy Statement also omits material information regarding potential conflicts of interest of the Company's officers and directors.

71. Specifically, the Definitive Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of AMRI's officers and directors, including who participated in all such communications.

72. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

73. The Definitive Proxy Statement omits material information regarding potential conflicts of interest of Credit Suisse.

74. For example, the Definitive Proxy Statement fails to disclose the "other investment banking and financial services" Credit Suisse has provided to AMRI, the Buyers, and their affiliates, as well as the amount of compensation received by Credit Suisse for such services.

75. The Definitive Proxy Statement fails to disclose the amount of compensation received or to be received by Credit Suisse for serving as "lenders to members of Carlyle and GTCR" and the nature of such lender services.

76. The Definitive Proxy Statement also fails to disclose Credit Suisse's holdings in AMRI's, the Buyers', and their affiliates' stock.

77. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

78. Next, the Definitive Proxy Statement fails to disclose whether any confidentiality agreements executed by AMRI and the prospective bidders, particularly "Party D," contained "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

79. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

80. The Definitive Proxy Statement also omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

81. For example, the Definitive Proxy Statement fails to disclose how discussions concluded between the Company's representatives and "Party G," which submitted an offer to acquire the Company for *$22.50 per share in cash – significantly higher than the merger consideration* – on June 3, 2017, and whether Party G subsequently contacted the Company after its discussion with Credit Suisse on June 5, 2017.

82. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to AMRI's stockholders.

## COUNT I

**Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and AMRI**

83. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

84. The Individual Defendants disseminated the false and misleading Definitive Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. AMRI is liable as the issuer of these statements.

85. The Definitive Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Definitive Proxy Statement.

86. The Individual Defendants were at least negligent in filing the Definitive Proxy Statement with these materially false and misleading statements.

87. The omissions and false and misleading statements in the Definitive Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Definitive Proxy Statement and in other information reasonably available to stockholders.

88. The Definitive Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

89. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

90. Because of the false and misleading statements in the Definitive Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and the Buyers

91.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

92.     The Individual Defendants and the Buyers acted as controlling persons of AMRI within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of AMRI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Definitive Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

93.     Each of the Individual Defendants and the Buyers was provided with or had unlimited access to copies of the Definitive Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

94.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Definitive Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Definitive Proxy Statement.

95.     The Buyers also had direct supervisory control over the composition of the Definitive Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Definitive Proxy Statement.

96.     By virtue of the foregoing, the Individual Defendants and the Buyers violated Section 20(a) of the 1934 Act.

97. As set forth above, the Individual Defendants and the Buyers had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## COUNT III

## Claim for Breach of Fiduciary Duties

## (Against the Individual Defendants)

98. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein

99. The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to plaintiff and the Company's public stockholders.

100. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in the Company.

101. As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of AMRI by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of AMRI to its public stockholders.

102. Indeed, defendants have accepted an offer to sell AMRI at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

103. Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in support of the Proposed Transaction.

104. The Individual Defendants dominate and control the business and corporate affairs of AMRI, and are in possession of private corporate information concerning the Company's assets,

business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of AMRI which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

105. By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

106. As a result of the actions of the Individual Defendants, plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of AMRI's assets and have been and will be prevented from obtaining a fair price for their common stock.

107. Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, all to the irreparable harm of the Class.

108. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

F. Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for AMRI and obtain a transaction which is in the best interests of AMRI and its stockholders;

G. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

H. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 17, 2017

**RIGRODSKY & LONG, P.A.**

By: /s/ Brian D. Long
Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**BRODSKY & SMITH, LLC**
Evan J. Smith
Marc L. Ackerman
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Telephone: (610) 667-6200
Email: esmith@brodskysmith.com
Email: mackerman@brodskysmith.com

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*